# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| JUDY L. BAUCOM, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 3:10-00603 |
| v. ) | Judge Nixon / Knowles |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

This is a civil action filed pursuant to 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of Social Security denying Plaintiff Disability Insurance Benefits ("DIB"), as provided under Title II of the Social Security Act ("the Act"). The case is currently pending on Plaintiff's Motion for Judgment on the Administrative Record. Docket No. 15. Defendant has filed a Response, arguing that the decision of the Commissioner was supported by substantial evidence and should be affirmed. Docket No. 19.

For the reasons stated below, the undersigned recommends that this action be REMANDED.

## I. INTRODUCTION

Plaintiff filed her application for Disability Insurance Benefits ("DIB") on October 20, 2006, alleging that she had been disabled since July 27, 2006, due to headaches, hypertensive cardiovascular disease, hypertension, brittle diabetes, lumbar and cervical spine impairments,

1

knee impairments, back and hip pain, arthritis, diabetic neuropathy, a blocked artery in her brain, and high cholesterol. *See, e.g.,* Docket No. 13, Attachment ("TR"), 59, 72-74, 90. Plaintiff's application was denied both initially (TR 50) and upon reconsideration (TR 51). Plaintiff subsequently requested (TR 63) and received (TR 18-35) a hearing. Plaintiff's hearing was conducted on April 7, 2009, by Administrative Law Judge ("ALJ") Kathleen M. Thomas. TR 18. Plaintiff and Vocational Expert ("VE"), Dr. Kenneth Anchor, appeared and testified. TR 18-19.

On April 22, 2009, the ALJ issued a decision unfavorable to Plaintiff, finding that Plaintiff was not disabled within the meaning of the Social Security Act and Regulations. TR 11-17. Specifically, the ALJ made the following findings of fact:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.
>
> 2. The claimant has not engaged in substantial gainful activity since July 27, 2006, the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. The claimant has the following severe impairments: chronic allegations of pain, history of coronary artery disease, neck disorder, obesity, diabetes mellitus, hypertension and arthralgias (20 CFR 404.1520(c)).
>
> 4. The claimant does not have an impairment or combination or impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform the full range of medium work as defined in 20 CFR 404.1567(c).
>
> 6. The claimant is capable of performing past relevant work as a stocker, warehouse attendant and machine operator.

> This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).
>
> 7. The claimant has not been under a disability, as defined in the Social Security Act, from July 27, 2006 through the date of this decision (20 CFR 404.1520(f)).

TR 13-17.

On April 29, 2009, Plaintiff timely filed a request for review of the hearing decision. TR 7. On April 29, 2010, the Appeals Council issued a letter declining to review the case (TR 1-3), thereby rendering the decision of the ALJ the final decision of the Commissioner. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g). If the Commissioner's findings are supported by substantial evidence, based upon the record as a whole, then these findings are conclusive. *Id.*

## II. REVIEW OF THE RECORD

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of Record. Accordingly, the Court will discuss those matters only to the extent necessary to analyze the parties' arguments.

## III. CONCLUSIONS OF LAW

### A. Standard of Review

This Court's review of the Commissioner's decision is limited to the record made in the administrative hearing process. *Jones v. Secretary*, 945 F.2d 1365, 1369 (6th Cir. 1991). The purpose of this review is to determine (1) whether substantial evidence exists in the record to support the Commissioner's decision, and (2) whether any legal errors were committed in the process of reaching that decision. *Landsaw v. Secretary*, 803 F.2d 211, 213 (6th Cir. 1986).

"Substantial evidence" means "such relevant evidence as a reasonable mind would accept as adequate to support the conclusion." *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir. 1999) (*citing Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "Substantial evidence" has been further quantified as "more than a mere scintilla of evidence, but less than a preponderance." *Bell v. Commissioner,* 105 F.3d 244, 245 (6th Cir. 1996) (*citing Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

The reviewing court does not substitute its findings of fact for those of the Commissioner if substantial evidence supports the Commissioner's findings and inferences. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). In fact, even if the evidence could also support a different conclusion, the decision of the Administrative Law Judge must stand if substantial evidence supports the conclusion reached. *Her*, 203 F.3d at 389 (*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997). However, if the Commissioner did not consider the record as a whole, the Commissioner's conclusion is undermined. *Hurst v. Secretary*, 753 F.2d 517, 519 (6th Cir. 1985) (*citing Allen v. Califano,* 613 F.2d 139, 145 (6th Cir. 1980) (*citing Futernick v. Richardson,* 484 F.2d 647 (6th Cir. 1973))).

In reviewing the decisions of the Commissioner, courts look to four types of evidence: (1) objective medical findings regarding Plaintiff's condition; (2) diagnosis and opinions of medical experts; (3) subjective evidence of Plaintiff's condition; and (4) Plaintiff's age, education, and work experience. *Miracle v. Celebrezze*, 351 F.2d 361, 374 (6th Cir. 1965).

## B.  Proceedings At The Administrative Level

The claimant carries the ultimate burden to establish an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Substantial gainful activity" not only includes previous work performed by Plaintiff, but also, considering Plaintiff's age, education, and work experience, any other relevant work that exists in the national economy in significant numbers regardless of whether such work exists in the immediate area in which Plaintiff lives, or whether a specific job vacancy exists, or whether Plaintiff would be hired if he or she applied. 42 U.S.C. § 423(d)(2)(A).

At the administrative level of review, the claimant's case is considered under a five-step sequential evaluation process as follows:

> (1) If the claimant is working and the work constitutes substantial gainful activity, benefits are automatically denied.
>
> (2) If the claimant is not found to have an impairment which significantly limits his or her ability to work (a "severe" impairment), then he or she is not disabled.
>
> (3) If the claimant is not working and has a severe impairment, it must be determined whether he or she suffers from one of the "listed" impairments[1] or its equivalent. If a listing is met or equaled, benefits are owing without further inquiry.
>
> (4) If the claimant does not suffer from any listing-level impairments, it must be determined whether the claimant can return to the job he or she previously held in light of his or her residual functional capacity (e.g., what the claimant can still do despite his or her limitations). By showing a medical condition that prevents him or her from returning to such past relevant work, the claimant establishes a *prima facie* case of disability.
>
> (5) Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner to establish the claimant's ability to work by proving the existence of a significant number of

---

[1] The Listing of Impairments is found at 20 C.F.R., Pt. 404, Subpt. P, App. 1.

> jobs in the national economy which the claimant could perform, given his or her age, experience, education, and residual functional capacity.

20 C.F.R. §§ 404.1520, 416.920 (footnote added). *See also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

The Commissioner's burden at the fifth step of the evaluation process can be satisfied by relying on the medical-vocational guidelines, otherwise known as "the grid," but only if the claimant is not significantly limited by a nonexertional impairment, and then only when the claimant's characteristics identically match the characteristics of the applicable grid rule. Otherwise, the grid cannot be used to direct a conclusion, but only as a guide to the disability determination. *Id.* In such cases where the grid does not direct a conclusion as to the claimant's disability, the Commissioner must rebut the claimant's *prima facie* case by coming forward with particularized proof of the claimant's individual vocational qualifications to perform specific jobs, which is typically obtained through vocational expert testimony. *See Varley v. Secretary*, 820 F.2d 777, 779 (6th Cir. 1987).

In determining residual functional capacity for purposes of the analysis required at stages four and five above, the Commissioner is required to consider the combined effect of all the claimant's impairments; mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. § 423(d)(2)(B).

### C. Plaintiff's Statement Of Errors

Plaintiff contends that the ALJ erred in: (1) failing to develop the record and follow the "Treating Physician Rule," and in (2) discounting Plaintiff's credibility. Docket No. 16. Accordingly, Plaintiff maintains that, pursuant to 42 U.S.C. § 405(g), the Commissioner's

decision should be reversed, or in the alternative, remanded. *Id.*

Sentence four of § 405(g) states as follows:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.

42 U.S.C. §§ 405(g), 1383(c)(3).

"In cases where there is an adequate record, the Secretary's decision denying benefits can be reversed and benefits awarded if the decision is clearly erroneous, proof of disability is overwhelming, or proof of disability is strong and evidence to the contrary is lacking." *Mowery v. Heckler*, 771 F.2d 966, 973 (6th Cir. 1985). Furthermore, a court can reverse the decision and immediately award benefits if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits. *Faucher v. Secretary*, 17 F.3d 171, 176 (6th Cir. 1994). *See also Newkirk v. Shalala*, 25 F.3d 316, 318 (6th Cir. 1994).

**1. Development of the Record and "Treating Physician Rule"**

Plaintiff argues that the ALJ "failed to fulfill her affirmative duty to develop the record" because she did not obtain "critical treatment records." Docket No. 16. Plaintiff additionally argues that the ALJ failed to follow the "Treating Physician Rule" because she "applied the incorrect legal standard when weighing the opinions of the treating and non-examining physicians of record . . . ." *Id.*

Defendant responds that the ALJ properly evaluated the opinions of Plaintiff's treating physicians. Docket No. 19. Defendant maintains that the ALJ provided "good reasons" for why the treating physicians' opinions were not given significant weight and contends that the ALJ's determination is supported by substantial evidence. *Id.*

7

In her decision, the ALJ gave no weight to the opinion of treating physician Dr. Francisco J. Mayorquin and little weight to the opinion of treating neurosurgeon Dr. Robert T. Cochran. TR 14-15.

On January 5, 2009, Dr. Mayorquin completed a multiple impairment questionnaire regarding Plaintiff. TR 350-57. In that questionnaire, Dr. Mayorquin indicated that Plaintiff experienced "chronic," daily, "radiating" back and neck pain, especially after sitting for "long periods," bending, pulling, or lifting. TR 351-52. Dr. Mayorquin opined that Plaintiff could sit, stand, or walk for up to one hour per eight-hour day, but could not sit, stand, or walk continuously in a work setting. TR 352-53. Dr. Mayorquin also opined that Plaintiff could not lift or carry at all, could not engage in repetitive reaching, and could not push, pull, kneel, bend, or stoop. TR 353, 356. Dr. Mayorquin found that Plaintiff experienced marked limitations in her ability to grasp, turn, or twist objects; marked limitations in her ability to use her fingers or hands for fine manipulations; and marked limitations in her ability to reach. TR 353-54.

He further indicated that Plaintiff's neck condition would preclude her from working a full time job that would require her to keep her neck in a constant position, such as looking at a computer screen, on a sustained basis. TR 354-55. Dr. Mayorquin opined that Plaintiff experienced pain severe enough to "frequently" interfere with her attention and concentration, and also opined that Plaintiff would need to take unscheduled breaks to rest at unpredictable intervals during the day. TR 355. Dr. Mayorquin indicated that Plaintiff was capable of handling moderate stress jobs, but that her back problems limited her. *Id.*

Dr. Mayorquin estimated Plaintiff's pain to be an 8 out of 10. TR 352. Dr. Mayorquin indicated that Plaintiff took Oxycontin and Vicodin, without side effects, for pain management

8

(TR 354), but that Plaintiff had been unable to completely relive the pain with medication without unacceptable side effects (TR 352). He opined that Plaintiff's symptoms would likely increase if she were placed in a competitive work environment. TR 354.

Dr. Mayorquin diagnosed Plaintiff with "severe lumbar osteoarthritis" with a "fair" prognosis. TR. 350. He indicated that the "earliest date" that the limitations expressed in the questionnaire applied was January 5, 2009 (the date the questionnaire was completed), and he opined that Plaintiff's impairments were ongoing, such that they were expected to last at least 12 months. TR 355-56.

The ALJ indicated that she "was unable to give weight" to the findings of Dr. Mayorquin's January 5, 2009 multiple impairment questionnaire because: (1) it was inconsistent with his treatment notes, as his treatment notes "never set out any work-related limitations" prior to this questionnaire; (2) there was "no objective evidence of a lower back impairment"; (3) there was no evidence that Plaintiff was treated by Dr. Mayorquin between September 2007 and January 2009; (4) "the January 5, 2009 office note does not show any results of an examination, unlike all other office visits," so "it is unknown whether [Plaintiff] was actually examined at that time"; and (5) Dr. Mayorquin indicated that the limitations expressed in his questionnaire only applied from January 5, 2009, the date on which it was completed, which would not establish an impairment that was disabling for a 12-month period. TR 14.

Plaintiff argues that the ALJ's reasons for failing to give weight to Dr. Mayorquin's January 5, 2009 findings lack support. Docket No. 16. Specifically, Plaintiff argues that: (1) it is irrelevant that Dr. Mayorquin did not record specific work-related limitations in his treatment records, because several Courts of Appeals have pointed out that treatment records are not

9

prepared in anticipation of litigation, and therefore, ordinarily do not reflect work-related limitations; (2) the fact that Plaintiff did not see Dr. Mayorquin between September 2007 and January 2009 does not bear on the question of her disability, because Plaintiff was treated for her musculoskeletal conditions and depression by Dr. Cochran, her treating neurologist, during that period, and because frequency of treatment is only one factor to consider when evaluating a treating physician's opinion under 20 C.F.R. § 404.1527(d); (3) x-rays and MRIs of Plaintiff's back[2] constitute objective evidence establishing Plaintiff's lower back impairment; (4) Dr. Mayorquin misunderstood the question when he answered that the limitations applied only since January 5, 2009, because he had opined earlier (TR 336) that Plaintiff was disabled prior to that date; (5) Dr. Mayorquin specifically indicated that he based his opinion on clinical and diagnostic findings of chronic lumbar spine pain and neck pain, and on an MRI that revealed severe osteoarthritis; (6) Dr. Mayorquin's opinion was not contradicted by other substantial evidence of record (except the opinion of the state agency physician on which Plaintiff argues that ALJ erroneously relied). Docket No. 16.

Plaintiff also argues that the ALJ erroneously rejected the opinion of Dr. Cochran, her treating neurologist. Docket No. 16. As noted above, the ALJ accorded little weight to Dr. Cochran's opinion. TR 14-15.

The "medical evidence" in the record from Dr. Cochran consists of two letters from Dr. Cochran: the first, a March 22, 2007 letter from Dr. Cochran to Dr. Mayorquin thanking him for

---

[2]Plaintiff acknowledges that these MRIs are not included in the record, but argues that "the ALJ neglected to fulfill [her] affirmative duty to develop the record and obtain these MRIs along with other evidence she felt was critical to make a determination," especially in light of Dr. Mayorquin's reliance on the MRIs. Docket No. 16.

referring Plaintiff; the second, a January 5, 2009 letter from Dr. Cochran to "Whom It May Concern" regarding Plaintiff's disability. *See* TR 346-47.

Dr. Cochran's March 22, 2007 letter states, in its entirety, as follows:

> Dear Dr. Mayorquin:
>
> Thank you for referring this lady. As in her husband's case, I don't get a really good history, but the good side is that I've seen her husband informally just a week or so after I started therapy, and he says he's sleeping better and feeling better, so all to the good. This lady complains of years of pain up and down the spine. She several years ago saw a Centennial orthopedist, who told her there was nothing to do. She says the past five or six years the pain has been quite bad and she's been on Oxycontin and Lortab with some relief. She actually worked until July, '06 in a machine shop. She had to give it up on account of her health. She says her sleep has been quite poor for several years, but she denies depression. There is a history of some administration of Valium maybe twenty years ago, but she says her nerves are okay now, although she does occasionally get shaky. She denies any problem with drug or alcohol abuse. She acknowledges occasionally taking more than the prescribed amount of opiates, and I hope that doesn't become a problem for us. She said her energy has been quite poor the past couple of years, and she says she really has become a "different person." Formerly she was a workaholic, ten to twelve hours a day. There is a history of a motor vehicle accident in '72 with two months' hospitalization with some kind of vertebral fracture and perhaps some other fractures. She acknowledges her memory is off a little bit. I asked about her childhood. Her father was alcoholic. She says she suffered mental abuse, but no physical abuse. She says she's gained 25 pounds since she quit work.
>
> On physical examination, she moves about hesitantly but without significant gait impairment. Cognition appears normal. Affect is flat. Heart and lungs are clear. EKG done in anticipation of tricyclic therapy is within normal limits. Straight leg raising is unremarkable. She does have a lot of myofascial tenderness up and down the paravertebral musculature.
>
> I'll continue her ongoing Oxycontin 80 mg Q12 and Lortab 7.5/500 QID, and I'm going to introduce Klonopin and

11

>       Nortriptyline, and hopefully they will make a difference.

TR 347.

> Dr. Cochran's January 5, 2009 letter states, in its entirety, as follows:
>
>> To Whom It May Concern:
>>
>> Be advised that the above-named [Plaintiff] has been under my care since March, 2007 for treatment of her chronic pain. She is opiate-dependent (Oxycontin) and is seen every three months for medication refills. She is totally disabled.

TR 346.

The ALJ accorded little weight to Dr. Cochran's opinion because: (1) there is no evidence of additional office visits to Dr. Cochran; (2) Dr. Cochran's opinion that Plaintiff is "totally disabled" is not binding, as statements concerning disability are not medical opinions, but rather, are administrative findings which are reserved to the Commissioner; and (3) there are no corresponding treatment notes from Dr. Cochran supporting disability. TR 14-15.

Plaintiff asserts that, although the ultimate conclusion regarding disability is reserved to the Commissioner, that fact "does not mean that [Dr. Cochran's] opinion can be automatically disregarded," especially in light of the fact that Dr. Cochran is a treating physician. *Id.* Plaintiff also maintains that the ALJ cannot reject Dr. Cochran's opinion upon the premise that there are no treatment notes from him in the record, because the ALJ had a duty to obtain those treatment notes in order to fully and fairly develop the record. *Id.* Plaintiff contends that, because the ALJ did not obtain Dr. Cochran's records, she could not consider the factors set forth in 20 C.F.R. § 404.1527(d), enumerated below, to determine what weight to accord Dr. Cochran's opinion. *Id.*

Plaintiff argues that the "ALJ placed heavy reliance upon the absence of records and

perceived ambiguities that could easily have been obtained and clarified." *Id.* So that she could evaluate a fully and fairly developed record, Plaintiff contends that the ALJ should have: (1) obtained the lumbar spine MRI referenced by Dr. Mayorquin; (2) clarified Dr. Mayorquin's answer to the question regarding the onset date; and (3) obtained Dr. Cochran's treatment records. *Id.*

With regard to the evaluation of medical opinion evidence, the Code of Federal Regulations states:

> Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider all of the following factors in deciding the weight we give to any medical opinion.
> (1) Examining relationship. Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.
> (2) Treatment relationship. Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(i) and (d)(2)(ii) of this section, as well as the factors in paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.
> (i) Length of the treatment relationship and the frequency of examination. . . .
> (ii) Nature and extent of the treatment relationship. . . .

>    (3) Supportability. The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion. . . .
>    (4) Consistency. Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion.
>    (5) Specialization. We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.
> . . . .

20 C.F.R. § 416.927(d). *See also* 20 C.F.R. § 404.1527(d).

The Code of Federal Regulations defines a "treating source" as:

> [Y]our own physician, psychologist, or other acceptable medical source who provides you or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you.

20 C.F.R. § 404.1502.

With regard to a fully and fairly developed record, the Code of Federal Regulations states:

> When the evidence we receive from your treating physician or psychologist or other medical source is inadequate for us to determine whether you are disabled, we will need additional information to reach a determination or a decision. To obtain the information, we will take the following actions.
>
> (1) We will first recontact your treating physician or psychologist or other medical source to determine whether the additional information we need is readily available. We will seek additional evidence or clarification from your medical source when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques.

14

20 C.F.R. § 416.912(e)(1).

As noted above, Dr. Mayorquin, in his multiple impairment questionnaire, diagnosed Plaintiff with "severe lumbar osteoarthritis," and, in response to the questionnaire's section for "positive clinical findings that demonstrate and/or support your diagnosis," Dr. Mayorquin referred to a MRI which revealed severe osteoarthritis. TR 350. Nearly all of Dr. Mayorquin's treatment notes refer to "MRI thoracic and lower back 04/18/03," but this MRI is not contained in the record. *See* TR 176, 177, 181, 186, 190, 192, 200, 204, 207, 209, 212, 214, 217, 219, 221, 225, 230, 242, 243, 320, 334.

Under 20 C.F.R. § 416.912(e)(1), an ALJ is required to recontact a medical source for additional evidence when "the report does not contain all the necessary information." In the instant case, the MRI of Plaintiff's lower back referred to in Dr. Mayorquin's treatment notes and in Dr. Mayorquin's multiple impairments questionnaire constitutes "necessary information" that was not contained within the record. The results of this MRI are necessary for the ALJ's ability to adequately evaluate the legitimacy and severity of Plaintiff's alleged lower back impairment, as well as the credibility of Dr. Mayorquin's opinion.[3]

Under 20 C.F.R. § 416.927(d), quoted above, the ALJ must give a treating physician's opinion controlling weight if it is "well-supported by medically acceptable clinical and

---

[3]Although the MRI at issue was conducted years before Plaintiff's alleged onset date, it appears to be the most recent imaging of Plaintiff's lower back, and is therefore relevant medical evidence that must be considered by the ALJ. Additionally, the record does not contain evidence that Plaintiff's has experienced significant improvement in her alleged back condition. Since the MRI could lay a foundation for, or establish a baseline for, a back condition such as osteoarthritis that had progressively deteriorated, so as to give credence to Plaintiff's current allegations, or the MRI could establish that Plaintiff's disability has lasted for a period longer than 12 months, the ALJ should have obtained the MRI and included it in the record.

15

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" of record. If controlling weight is not given to the treating physician's opinion, the ALJ must evaluate the treating physician's opinion using the other factors set forth in the Code discussed above. *See id.* Without the results from the MRI of Plaintiff's lower back, the ALJ could not properly determine whether Dr. Mayorquin's diagnosis was "well-supported by medically acceptable clinical and laboratory diagnostic techniques." Similarly, if Dr. Mayorquin's opinion was not given controlling weight, the ALJ could not properly consider the "supportability" and "consistency" factors of section 416.927(d) without the results from the MRI of Plaintiff's lower back.

Furthermore, as noted above, one of the reasons enumerated by the ALJ for why she was "unable to give weight" to Dr. Mayorquin's opinion was because there was "no objective evidence of a lower back impairment." TR 14. An MRI of Plaintiff's lower back would be "objective evidence" that could possibly substantiate Dr. Mayorquin's assessment of Plaintiff's residual functional capacity and physical limitations. It is improper for the ALJ to discount Dr. Mayorquin's opinion, as a treating physician, on the grounds that his findings lack objective evidence, when the ALJ did not make the required effort to obtain the evidence upon which Dr. Mayorquin reportedly relied. As such, the ALJ had a duty to recontact Dr. Mayorquin and seek the MRI of Plaintiff's lower back.

Because the ALJ failed to recontact Plaintiff's treating physician, Dr. Mayorquin, to seek the results of the 2003 MRI of Plaintiff's thoracic and lower back, the ALJ failed to fully and fairly develop the record.

## IV.  RECOMMENDATION

For the reasons discussed above, the undersigned recommends that this action be REMANDED.[4]

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court.  Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections.  Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation.  *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

_____
E. CLIFTON KNOWLES
United States Magistrate Judge

---

[4] Because the undersigned recommends that this action be REMANDED, it is unnecessary to address Plaintiff's remaining statements of error.